IN THE MATTER OF COMMERCIAL BANK OF JAMESPORT, IN LIQUIDATION, S. L. CANTLEY, COMMISSIONER OF FINANCE, A. J. PLACE, SPECIAL DEPUTY COMMISSIONER OF FINANCE IN CHARGE, RESPONDENT, v. H. L. SONGER, CLAIMANT, APPELLANT.—74 S. W. (2d) 100.

Kansas City Court of Appeals. July 2, 1934.

*Dudley & Brandom* for respondent.

*H. L. Songer, Pro se.*

REYNOLDS, C.—Final judgment adverse to him having been rendered by the Circuit Court of Daviess County on a demurrer to his motion in this case, complainant appealed. The appeal was granted to the Supreme Court; and that court, upon investigation, ruled it had no appellate jurisdiction of the cause and, in a written opinion filed, ordered that the same be transferred to this court as the court having jurisdiction.

It appears from the record that, on May 20, 1927, the complainant filed a second amended motion in the proceedings pending in the Circuit Court of Daviess County, wherein the liquidation of the Commercial Bank of Jamesport, an insolvent bank located in Daviess County, was being carried forward under the supervision of said court by S. L. Cantley, Commissioner of Finance of the State of Missouri, and his special deputy commissioner, A. J. Place, who were in charge of said bank and its assets and affairs.

Among other things, the motion alleged that the said Commercial Bank had, on April 15, 1925, been taken in charge by the said finance commissioner for the purpose of liquidating its affairs and that such commissioner and his deputy commissioner had been, since such time, exercising control over the affairs of said bank in an effort to liquidate the same; and, in general terms, the motion charged misconduct in office, neglect of duty, and other matters equivalent and to the same effect (unnecessary here to set out in detail) by them connected with their management. It further set out in detail certain specified instances and transactions complained of in the liquidation of said bank by the commissioner and his deputy, which, it charged in a general way, were unauthorized and unfair and which were probably intended to come within the general charges in said motion of neglect of duty and misconduct in office. Summing up said motion, it may be said, as was said by Commissioner STURGIS in his opinion for the Supreme Court transferring this appeal to this court:

". . . the basis of complainant's motion is the failure of the State Finance Commissioner and his deputy in charge to properly administer the assets of the failed bank and to apply the same to the payment of its obligations, and more especially in failing and refusing to take possession of and administer certain property and claims justly belonging to the assets of the bank. The matters charged in the motion seem to be summed up by complainant in the charge that the Finance Commissioner and his deputy in charge 'have worked for the interest of the directors of the failed bank in assisting them in securing property which rightfully belonged to the assets of the bank; and instead of taking possession of the assets of the bank and using the same to pay its creditors (including complainant), the Finance Commissioner and his deputy have allowed the directors to take and use the assets of the bank for their own use or in discharge of their own obligations.'

"That complainant's cause of action is based on the dereliction of his official duty on the part of the Commissioner of Finance in administering the assets of the defunct bank and in not executing the trust imposed on him by law is shown by complainant's prayer for relief, which is as follows:

" 'Wherefore, this complainant prays the court to examine the acts and conduct of the Department of Finance, the Special Deputy Commissioner of Finance, agents and attorneys and if upon a hearing it is disclosed that the above have not faithfully exercised the trust imposed upon them or have been guilty of any violation of the law or that their acts have deprived this complainant or any other creditor of the Commercial Bank of any rights or property; that if the court finds that the Special Deputy Commissioner of Finance or any agent, employee or attorney has made agreement or agreements with these directors relative to the disposition or disposal of any property of said bank, which agreement or agreements have not been approved by this court, that the court *appoint some suitable person to liquidate the affairs* of the Commercial Bank in a just and equitable manner and according to law; that the court issue such other and further orders as the evidence may require and in the opinion of this court would be just and proper; that the court make an order reimbursing this complainant for his services and his cost in this action.' "

The motion invited the court to enter upon an investigation for the discovery of some wrongdoing upon the part of the finance commissioner and his deputy which might justify the appointment of some one by the court to administer the liquidation of the insolvent bank in their stead. At least, as shown by its prayer, it sought no relief other than the appointment of some one by the court to administer the liquidation of the insolvent bank instead of the commissioner and his deputy, which necessarily involved their removal.

It was alleged in the motion that complainant was a creditor of the insolvent bank. The motion further alleged that the act of the Legislature in creating the Department of Finance and defining the mode and manner of liquidating insolvent banks was unconstitutional and was in violation of the constitutions of Missouri and of the United States and does not constitute due process of law and that, by certain acts of the finance commissioner and his deputy complained of, complainant had been deprived of his constitutional rights, contrary to the Fourteenth Amendment to the Constitution of the United States and contrary to the Constitution of the State of Missouri.

On December 29, 1929, the commissioner and his deputy filed their joint demurrer to the motion, specifying several grounds, among them that the circuit court had no power or jurisdiction to appoint a special deputy commissioner of finance or to appoint some one with power to liquidate the business and affairs of the Commercial Bank of Jamesport and that the motion does not state facts sufficient to warrant the court in granting the relief prayed for.

Thereafter, on February 3, 1930, complainant filed an application for a change of venue from the judge of the court, which was denied.

Thereafter, on the same date, the demurrer was sustained by the court; and complainant refused to plead further. Thereupon, the court ordered that said motion be struck from the files. From such action and judgment, this appeal is prosecuted.

### Opinion.

This appeal was originally sent to the Supreme Court by reason of the constitutional questions supposed to be raised by the motion. However, it was held by that court that no such questions were properly raised by such motion and that such motion was not therefore sufficient to confer jurisdiction of the appeal upon it by reason of raising a constitutional question. It further held that jurisdiction of said appeal was not conferred upon it by any "amount in controversy" shown or by the subject-matter of the relief sought or other matter and ordered the appeal transferred to this court as the court having jurisdiction to determine the cause.

In his opinion transferring this cause, Commissioner STURGIS, in a consideration of the motion involved herein for the purpose of determining whether or not constitutional questions had been raised sufficient to invoke the appellate jurisdiction of the Supreme Court, held that no such questions were properly raised and that the complainant's cause of action, as shown by his prayer for relief stated in his motion, was based upon the dereliction of his official duty on the part of the commissioner of finance in administering the assets of the insolvent bank and in not executing the trust imposed on him by law.

(1) The appellant complains of the action of the trial court in overruling his application for a change of venue. However, if error it was, he should have called it to the attention of the trial court in the motion for a new trial. This, he appears not to have done. Such assignment is therefore not open to review by us.

(2) Among other assignments of error, the appellant complains of the action of the court in sustaining the demurrer to his petition. If the action of the court in sustaining the demurrer is to be justified on any of the grounds set out in the demurrer, then its action in such regard is not to be impeached.

Among the grounds set out therein was lack of jurisdiction in the court to grant the relief sought by appointing any person, commissioner or otherwise to liquidate the affairs of the insolvent bank. It is apparent that this, at least, is one of the grounds upon which the court based its action. Commissioner STURGIS, in his learned opinion transferring this cause, said:

"It is apparent that the trial court sustained the demurrer to this somewhat anomalous motion and dismissed the same on the ground that it had no power or jurisdiction to discharge or oust the Commissioner of Finance or his deputy from the possession and control of the assets of the failed bank and to appoint some suitable person

to liquidate the business and affairs of such bank. The case is argued here by the Commissioner of Finance and his deputy on the theory that such is the only question involved, and such commissioner and his deputy take the position that the Department of Finance, of which the Finance Commissioner is the chief officer, is created by legislative authority and its power and duties are derived from and conferred by Chapter 34, Article 1, Revised Statutes 1929; that while the circuit courts are given supervisory control to an extent at least over the liquidation of insolvent banks, yet the Finance Commissioner or his deputy is not an officer of that court, does not derive his power from such court, and cannot be by such court removed from office or another person appointed in his place with like powers.''

.   .   .   .   .   .

''The question for the appellate court to decide is whether the trial court correctly construed the legislative act, Article 1 of Chapter 34, Revised Statutes 1929, creating the State Department of Finance under the management and control of the Commissioner of Finance and defining its powers and duties, as vesting in that department and officer the sole and exclusive power and duty to take possession of and administer the property and affairs of a failed bank, under the supervision of the circuit court, or whether such court does, under its general equity powers as such retain the power and jurisdiction to remove the Commissioner of Finance for dereliction in performance of his duties and appoint some other person as receiver or liquidator of the failed bank. The complainant insists that the trial court has, under the law, such power and duty and that in holding to the contrary it must construe the statute in question.''

We adopt the views expressed by Commissioner STURGIS.

(3) That the trial court was right in its construction of the act referred to and its action in sustaining the demurrer on account of lack of jurisdiction in the circuit court, sitting as a court of law or equity, to grant the relief sought as expressed in the prayer of the motion we have no doubt. While it has been several times held that the circuit court, under the act creating the Department of Finance, has a limited supervisory control of the liquidation of an insolvent bank under the control of the finance commissioner, it has nowhere been held that it has the power to remove him from office or from charge of such bank and its affairs and appoint some one in his stead to continue the liquidation. It has been several times held that he is to be regarded as a statutory receiver but never, so far as we are advised, as a receiver of the court, appointed by it or to be removed by it. In the recent case of Kirrane v. Boone, 66 S. W. (2d) 861, l. c. 866, it was said, referring to the act creating the Department of Finance, ''The court, under our statute, could not discharge the commissioner of finance as statutory receiver for

refusing to obey its order . . . '' to bring suit for the recovery of assets for the insolvent corporation he had in charge. While the court had the right to make such order in its supervisory control, disobedience to it by the commissioner only invited a penalty of ''peril for neglect of duty''—this, of course, in some other proceeding.

It has been several times held that such act relating to the creation of the Department of Finance and the liquidation of banking institutions was designed to and does provide a complete and exclusive scheme for the liquidation of insolvent banks and the distribution of their assets. [Commerce Trust Co. v. Farmers' Exchange Bank, 61 S. W. (2d) 928, l. c. 930; State v. Farmers' Exchange Bank of Gallatin, 56 S. W. (2d) 129, l. c. 132; Bowerstock Mills & Power Co. v. Citizens' Trust Co. of Gorin (Mo. App.), 298 S. W. 1049; State ex rel. Songer v. Fidelity & Deposit Co., 53 S. W. (2d) 1036, l. c. 1040.]

The scheme embodied in said act makes no provision for the liquidation by the circuit court, sitting as a court of law or equity, through a receiver or other person appointed by it, or for interference with the administration of the finance commissioner in the liquidation proceedings of the affairs of said bank. It provides for complete liquidation through the finance commissioner, his deputies, and his assistants with the circuit court of the county where the bank is located at times exercising jurisdiction in an advisory capacity; and, other than in such supervisory or advisory capacity, the jurisdiction of the court is excluded. Regardless of the ancient and inherent powers of a court of equity over trusts and trustees and over the appointment and removal of trustees, without a statute therefor, the exercise of such powers by the court was by this statute cut out and prohibited effectually so far as removing the commissioner is concerned or appointing some one in his stead to have charge, as was by the act contemplated and intended. It was said in Kirrane v. Boone, supra, referring to Chapter 34, Article 1, relating to the creation of the Department of Finance, that it was intended by this statute not only to provide an exclusive method of winding up the business affairs of an insolvent bank but to provide that such be done by a disinterested public officer selected for his fitness with ample and plenary powers.

(4) To this end, the statute provides for the creation of the State Department of Finance and for its charge with the execution of the laws relating to banks, private banks, trust companies, and savings and safe deposit companies and for the banking business of the State to be under the management and control of a chief officer called the commissioner of finance to be appointed by the governor with the advice and consent of the senate and to hold office at the pleasure of the governor. [Secs. 5282, 5283, 5284, et seq., chap. 34, supra.] Likewise, it is provided that such finance commissioner shall appoint

174

his deputy commissioners and assistants and that they shall hold their positions at his pleasure and be subject to his direction in their work. The further duties of the finance commissioner in the taking charge of and liquidating the affairs and the assets of an insolvent bank, including the final distribution and winding up of its affairs—dependent, in limited instances, on orders of the circuit court authorizing or approving its proceedings—are set out in detail by other sections of said chapter.

(5) The relief sought in the motion was clearly beyond the jurisdiction of the court to grant, at least in this proceeding; and the action of the court below in sustaining the demurrer and in ordering that the motion be struck from the files was proper. It is unnecessary to review other matters urged by complainant, as the point discussed is determinative of the cause. The cause is before us, of course, without constitutional questions sought to be set up in the motion, as the Supreme Court in its opinion found that none were involved. The judgment of the trial court is affirmed. *Campbell, C.,* concurs.

PER CURIAM:—The foregoing opinion of REYNOLDS, C., is adopted as the opinion of the court. The judgment is affirmed. All concur.